[S.F. No. 24817. Aug. 15, 1985.]

JERRY L. ROSSMAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

540

## Counsel

Robert W. Shapiro and King, Johnson & Shapiro for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Ellen A. Pansky and Trev Davis for Respondent.

## Opinion

**THE COURT.\***—In this proceeding, we review the recommendation of the State Bar of California that petitioner, Jerry L. Rossman, be suspended from the practice of law for two years, that execution of the order of suspension be stayed, and that petitioner be placed on probation for two years with conditions that include no actual suspension. As discussed below, we conclude that the recommended discipline of the State Bar is too lenient and should be increased to include a three-month actual suspension.

Petitioner was admitted to the practice of law in California in 1968 and has addresses in San Leandro and Hayward. He has one instance of prior discipline: a private reproval arising from a 1978 complaint involving petitioner's inadequate representation of a criminal defendant. There, his failure to participate fully in a felony trial resulted in the reversal of his client's conviction.

In the present case, the State Bar filed with this court an order approving a stipulation as to facts and discipline. Petitioner's stipulation with the hearing panel admitted the underlying facts and charges against him, and concurred in the recommended punishment. He did not file a petition for review until he was informed that we were considering imposing more severe sanctions. Petitioner does not now deny any of the stipulated facts, but he does allege some mitigating circumstances not reflected in the stipulation. Petitioner also seeks to be relieved from the binding effect of the conclusions of law contained in the stipulation.

---

\*Before Bird, C. J., Mosk, J., Kaus, J., Reynoso, J., Grodin, J., Lucas, J., and Merrill, J.†

---

†Assigned by the Chairperson of the Judicial Council.

■ We have held that in the event this court announces it is considering imposition of more severe sanctions than those recommended, we may relieve the attorney from the binding effects of the stipulation, but only as to its *legal conclusions*. (See *Wells* v. *State Bar* (1984) 36 Cal.3d 199, 207-208 [203 Cal.Rptr. 134, 680 P.2d 1093]; *Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 470-471 [169 Cal.Rptr. 581, 619 P.2d 1005]; *Innis* v. *State Bar* (1978) 20 Cal.3d 552, 555 [143 Cal.Rptr. 408, 573 P.2d 852].) Even then, however, an attorney is bound by the *factual* stipulations. (*Innis, supra,* 20 Cal.3d at pp. 554-555; see also *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 534-535 [213 Cal.Rptr. 236, 698 P.2d 139]; *Wells, supra,* 36 Cal.3d at p. 207; *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 662 [170 Cal.Rptr. 629, 621 P.2d 253].)

We adopted the rule that an attorney will not be relieved of factual stipulations because "otherwise the stipulation procedure would serve little or no purpose, requiring a remand for further evidentiary hearings whenever the attorney deems it advisable to challenge the factual recitals." (*Innis, supra,* 20 Cal.3d at p. 555.) However, when this court is considering harsher discipline "fundamental fairness seems to require us to relieve an attorney from the *legal conclusions* to which he may have agreed solely because the recommended punishment seemed to him fair and reasonable." (*Ibid.,* italics in original.)

Accordingly, we proceed to review the charges against petitioner and to make an independent appraisal of their legal effect, without considering the mitigating effect of the new evidence proffered by petitioner, evidence which was never presented to the State Bar.

## FACTS

In June 1978, petitioner was retained by Ruby S. to file a petition for conservatorship to name her as the conservator of Mary P. Petitioner requested and was paid the sum of $250 as attorney fees and $55.50 as a filing fee. Petitioner had previously been paid the sum of $605.50 out of the escrow of the sale of P.'s residence, to file a petition to have Lillian H. named as P.'s conservator. This amount represented $500 in attorney fees, $55.50 as the filing fee for that petition, and $50 to prepare a will for P.

In August 1978, petitioner filed and the court approved his petition appointing S. the conservator of P. and ordering that a bond in the amount of $44,000 be filed with the court. Although he received the bond, petitioner failed to file it or to have letters of conservatorship issued until *three years later* in August 1981.

Because the letters of conservatorship had not been issued, S. was unable between June 1978 and August 1981 to open conservatorship bank accounts. S. did become a joint tenant with P. on two time certificates; however, because the conservatorship was not established, P. continued signing her own checks and withdrew funds from the joint tenancy accounts at will, resulting in loss of principal and interest to the conservatee's estate in the approximate amount of $14,000.

In August 1979, S. mailed to petitioner a letter concerning the joint tenancy time certificates for the purpose of providing information for an accounting to the court. She advised him that her name was not on the conservatee's accounts. One month later, petitioner returned S.'s letter to her and advised her to hold it as the information would be useful if it became necessary to return to court for an accounting on the conservatorship.

In September 1980, a probate commissioner wrote to petitioner (presumably on behalf of S.), requesting a written explanation as to why: (1) no inventory and appraisement had been filed; (2) no accounting had been filed; (3) no bond had been posted; and (4) no letters of conservatorship had been issued. Petitioner responded that he had recently informed S. that he was not actively practicing law at that time, that she should retain other counsel, and that he was not certain whether letters of conservatorship had been issued.

In October 1980, the probate commissioner again wrote petitioner, stating that since no substitution of attorney had been filed, petitioner was still attorney of record. The commissioner also requested that petitioner provide information as to the appropriateness of an apparent payment of $900 in attorney fees made without court order. Petitioner replied that he would complete the case, that he had received a retainer from Lillian H. in the approximate amount of $300, and that he thought Ruby S. had paid an additional fee, but that the fees paid did not total $900. In fact, he was paid $250 by S. and $500 by H. as attorney fees, and had collected another $150 for filing fees.

In March 1981, the court issued an order calling for a hearing on the issue of whether petitioner should be removed as personal representative and/or attorney for the conservatorship estate. The hearing was set for July 23, 1981. On that date, petitioner filed an inventory and appraisement, and the citation hearing was continued. On August 14, 1981, petitioner filed a bond and had letters of conservatorship issued and filed.

On October 19, 1981, the new date scheduled for the removal hearing, petitioner filed the first accounting and report of conservator, and a substi-

tution of attorney form. In the accounting, petitioner failed to disclose that he had previously received attorney fees in the matter, and he requested that the court award him reasonable attorney fees for preparing the inventory and appraisement and the accounting.

In November 1981, petitioner refunded to P. the $50 he had been paid to prepare her will (which he never prepared). After being advised of the State Bar investigation, he also refunded $400 to the conservatorship estate.

## DISCUSSION

As discussed earlier, although petitioner is bound by the foregoing factual recitals in the stipulation, he may seek relief from its legal conclusions. ■ In this regard, petitioner now characterizes his conduct as merely negligent and not involving moral turpitude. We disagree.

At the very least, petitioner's omissions and delays with respect to the P. conservatorship constituted gross negligence and, accordingly, involved moral turpitude. No mere inadvertence could explain his failure to file the required bond and issue the proper letters of conservatorship until fully three years after obtaining court permission to do so. Particularly disturbing is that petitioner failed to act for a full year in the matter after communications from both his client and the probate commissioner. Furthermore, he failed to draft a will for P. after receiving a fee, and waited three and a half years before refunding that fee. The stipulated facts contain no explanation concerning his failure to perform these services for which he was retained.

Even if petitioner's conduct did not involve deliberate and wilful wrongdoings, his behavior constitutes serious misconduct which is a proper ground for discipline. We have often held that "Failure to communicate with and inattention to the needs of a client, standing alone, may constitute proper grounds for discipline. [Citations.] Similarly, discipline has been imposed for accepting compensation for legal services but failing to render such services. [Citations.]" (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937]; see also *McMorris* v. *State Bar* (1981) 29 Cal.3d 96, 99-100 [171 Cal.Rptr. 829, 623 P.2d 781].)

■ Moreover, it is well established that "[g]ross carelessness and negligence constitute violations of the oath of an attorney to faithfully discharge his duties to the best of his knowledge and ability, and involve moral turpitude as they breach the fiduciary relationship owed to clients." (*Giovanazzi, supra,* 28 Cal.3d at p. 475.) ■ Here, petitioner's neglect resulted in a $14,000 loss to the conservatee's estate and, even more disturbing, he then attempted to cover up his neglect by falsely informing the probate

commissioner that he was no longer counsel of record. Based upon these facts, we find ample reason to hold that petitioner's actions involved both gross negligence and moral turpitude.

Petitioner also collected attorney fees in the conservatorship matter without prior court approval. In conservatorship proceedings, an attorney seeking fees for services rendered to the conservator's estate must first seek court-ordered approval before compensation is paid. (Prob. Code, §§ 2640, 2642.) Thus, petitioner wilfully received an illegal fee in this matter. (See Rules of Professional Conduct, rule 2-107(A).)

Finally, petitioner has shown a willingness to deceive the court to cover up his actions and to receive additional fees. In response to the probate commissioner's first inquiry, he falsely represented that he had advised Ms. S. that he was no longer actively practicing law and that she should retain other counsel. Additionally, petitioner failed to disclose to the probate court his prior receipt of attorney fees; instead he requested additional fees. Thus, petitioner both failed to disclose material facts to the court and affirmatively and wilfully deceived the court.

### DISCIPLINE

As indicated previously, we advised petitioner that we were considering whether the sanctions recommended by the State Bar were too lenient. ▪ While we attach great weight to the State Bar's disciplinary recommendations, we must exercise our own independent judgment in arriving at the appropriate degree of discipline. (*McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 84 [196 Cal.Rptr. 841, 672 P.2d 431].)

▪ Upon reviewing the record, we conclude that the stipulated discipline is too lenient. This is the *second* instance in which petitioner's gross negligence has resulted in substantial injury to his clients. Furthermore, his misrepresentations to the probate commissioner and to the court, made to cover up his wrongdoings and to collect illegal fees, indicate a lack of professional integrity. In order to protect the public, preserve public confidence in the legal profession and maintain the highest professional standards for attorneys, we conclude that petitioner's discipline should include a three-month period of actual suspension.

In other cases involving similar conduct, we have imposed discipline which included some actual suspension. For example, in *Davis* v. *State Bar* (1983) 33 Cal.3d 231 [188 Cal.Rptr. 441, 655 P.2d 1276], the attorney failed to represent a client in a personal injury claim and deceived the court by falsely asserting that he did not represent the client. We imposed three

years' suspension with one-year actual suspension, stating that such conduct warrants "substantial discipline." (*Davis, supra,* at pp. 240-241.) In *Demain* v. *State Bar* (1970) 3 Cal.3d 381 [90 Cal.Rptr. 420, 475 P.2d 652], we imposed five years' suspension with six months' actual suspension where an attorney had misrepresented the status of three cases, failed to perform services and failed to return funds to clients. The attorney in *Demain,* in contrast to petitioner, showed substantial mitigating circumstances.

Petitioner contends that other similar cases have resulted in no actual suspension. He relies heavily on *Lewis* v. *State Bar* (1981) 28 Cal.3d 683 [170 Cal.Rptr. 634, 621 P.2d 258], where the attorney was found to have improperly handled a probate matter over a lengthy period of time. *Lewis,* however, is easily distinguishable in that the attorney did not make any misrepresentations to the court and also did not have any prior record of discipline. Petitioner also cites several cases in which we have upheld or imposed actual periods of suspension, arguing that in each instance the attorney's conduct was more egregious than his own, and that further punishment in the present case would be disproportionate. Each case, however, is distinguishable either in presenting significant mitigating factors, or involving dissimilar misconduct or no prior sanctions.

Accordingly, having concluded that the circumstances warrant a period of actual suspension, we order that petitioner be suspended from the practice of law for a period of two years, that execution of the suspension be stayed and that petitioner be placed on probation for two years, upon the conditions set forth in the stipulation entered into between the State Bar and petitioner on October 6, 1983, which conditions we hereby adopt, with the exception that petitioner's discipline shall include a three-month period of actual suspension. We further order that petitioner take and pass the Professional Responsibility Examination within one year from the effective date of this order, and comply with California Rules of Court, rule 955, subdivisions (a) and (c), within 30 and 40 days, respectively, from the effective date of this order.