[L.A. No. 32287. Sept. 10, 1987.]

HARVEY COOPER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Harvey Cooper, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Richard J. Zanassi and Magdalene Y. O'Rourke for Respondent.

OPINION

**THE COURT**—The Review Department of the State Bar Court recommends that petitioner Harvey Gilbert Cooper, a member of the State Bar since 1953, be disbarred. This recommendation is based upon findings of the hearing panel, adopted by the review department, that on several occasions between 1978 and 1982 petitioner wilfully breached his fiduciary obligation to one client, misappropriated funds and failed to perform services for another, withdrew from employment and failed to turn client files over to new counsel for two others, and as to others, failed to deliver papers and property to which the client was entitled and failed to use reasonable diligence and his best judgment in the exercise of his skills with reasonable speed for the purpose for which he had been employed. (See Bus. & Prof. Code, §§ 6067, 6103, 6106; Rules Prof. Conduct, rules 5-101 and 6-101.)

Petitioner has no prior record of discipline. The hearing panel recommended that petitioner be suspended from the practice of law for three years, execution of the suspension order to be stayed and petitioner placed on probation for one year under supervision and subject to several conditions, including six months actual suspension. The review department, however, recommends that he be disbarred[1] on the ground that petitioner's conduct reflects a serious breach of his fiduciary duty to these clients, the misconduct extends over a four-year period, and there was no change in his behavior since 1982.

Petitioner does not challenge the sufficiency of the evidence to support the findings of the review department. Rather, he argues: (1) the disciplin-

---

[1] One member dissented, recommending that a long period of actual suspension and restitution to Ms. G.M. be imposed.

ary proceedings should have been stayed when he served on the State Bar a notice of his filing of bankruptcy proceedings (11 U.S.C. § 362(a)); (2) he was misled by a State Bar examiner into believing that a settlement would be reached and therefore did not present as strong a defense as he might otherwise have; (3) the hearing panel abused its discretion in failing to appoint counsel to represent him; and (4) the recommended discipline is too severe in light of the mitigating circumstances under which his conduct occurred.

We conclude that none of these contentions has merit. Although the recommended discipline is severe, its purpose is not punishment, but protection of the public. As a means to that end, disbarment is warranted since the record contains nothing to support a conclusion that probationary supervision would be adequate to protect the public from a continuation of the pattern of misconduct found by the panel.

I.

The review department found the following, and we adopt those findings: Petitioner was attorney of record for Ms. G.M. in January 1981 in a dissolution proceeding. He arranged a loan in the amount of $11,000 from his friend to Ms. G.M. Between $3,500 and $3,750 of the proceeds were to be paid to petitioner for fees, with the balance to be invested by petitioner in a ranch he owned or in a corporation that he also owned. He did not advise Ms. G.M. to consult independent counsel regarding the loan and did not obtain her consent in writing. Although he had agreed in writing to make installment payments on the loan, he made only one $1,100 payment. Ms. G.M. obtained new counsel with whom petitioner failed to cooperate. The note that Ms. G.M. executed was found to be invalid and unenforceable by the court conducting the dissolution proceedings. The review department concluded, based on these findings, that petitioner had wilfully breached his fiduciary duty to Ms. G.M.

In August 1979 Ms. M.L.M. retained petitioner to represent her in a personal injury action. A $3,500 settlement was paid to petitioner, who then failed to pay his client's outstanding medical bill in the amount of $1,116 to the Jacobs Medical Group, although both the client and petitioner had signed a medical lien. The review department concluded that in this matter petitioner had wilfully failed to perform the legal services for which he had been employed and had wilfully misappropriated the $1,116 for his own use and benefit.

In September 1978 Ms. M.F.N. retained petitioner to represent her in a personal injury action. The case was settled. Petitioner distributed the pro-

ceeds of the settlement to the client on her representation that she would pay the medical bills incurred directly to the Jacobs Medical Group, although she and petitioner had signed and delivered medical liens to the Jacobs group. Petitioner's wilful failure to honor the medical lien resulted in a loss of $516 to the Jacobs Medical Group.

Mr. E.G. retained petitioner prior to November 1981 to represent him in a personal injury action. Mr. E.G. substituted other counsel in 1981. Although petitioner received written communications and telephone calls from Mr. E.G.'s new counsel, and was contacted by a State Bar investigator, petitioner did not turn over the client file or sign the substitution of counsel as he had been requested to do. The review department concluded that petitioner had wilfully withdrawn from employment and wilfully failed to turn over the file or to file the substitution of attorney.

Ms. M.R.T. retained petitioner to represent her in a personal injury action. In January 1982 Ms. M.R.T. substituted other counsel who requested that petitioner execute a substitution of attorney and forward the client file to him. Petitioner failed to do so even after he told a State Bar investigator that he would. The review department concluded that petitioner had withdrawn from employment without delivering all papers and property to which this client was entitled.

In August 1980 Ms. D.B. retained petitioner to represent her in a dissolution proceeding. When she was unable to locate or communicate with petitioner she asked the State Bar for his telephone number. On August 10, 1982, petitioner promised to forward the client file by August 29, 1982, but did not do so. In a first class letter, sent return receipt requested, Ms. D.B. demanded the file be returned by September 14, 1982. As of October 15, 1982 petitioner had not complied. He testified that he personally delivered the file to the client's apartment house manager some time after October 15, 1982. The review department concluded that petitioner had wilfully failed to deliver to his client the papers and property to which she was entitled, and had wilfully failed to use reasonable diligence and his best judgment in the exercise of his skills to accomplish with reasonable speed the purpose for which he was employed.[2]

## II.

Mitigating circumstances found by the review department include the absence of prior disciplinary proceedings. In addition, petitioner testified

---

[2] A seventh count, alleging that petitioner had failed to perform services for which he had been associated by another counsel, and for which he had been retained by the same client (Ortiz), was dismissed for lack of evidence.

that during 1980 to 1983 he suffered a period of depression during which he lost interest in his legal practice and became more interested in real estate and the film industry. He acknowledged that his handling of client matters fell below the standard required of an attorney, but the review department believed nonetheless that he was evasive in his claims that he could not recall or remember many events.

Jerome Lance, M.D., a psychiatrist testified on petitioner's behalf. He had seen petitioner for consultation about 10 times between 1983 and 1986. Dr. Lance believed that defendant had gone through a period of depression during which he could not concentrate, suffered from insomnia, could not rest or relax, and lost interest in his law practice. Petitioner had not been hospitalized and had no suicidal tendencies, but he had reported a loss of memory. It was Dr. Lance's opinion that petitioner went through a mid-life crisis during which he became progressively disinterested in the practice of law. Dr. Lance noted that petitioner had become interested in other pursuits such as real estate and film making, and found law less stimulating, but the witness did not know "how much of that reflects the depression versus the possibility that he may see other fields more to his basic talents or interests at this point in life." Dr. Lance acknowledged that it was difficult to know whether petitioner's depression caused his "burnout," or whether the burnout caused the depression. He could find nothing other than the burnout to cause the depression, however, and suggested that this was the cause, "but the depression, in turn, caused everything else to get worse and probably resulted in even more burnout, because he wasn't doing things well."

The witness had not seen petitioner during a time when he was practicing full time and could not offer an opinion on whether petitioner could function as an attorney on a full-time basis at present. He believed petitioner could do so in fields in which he had an interest, but might have to "push himself more to do those areas that he's not as fond of." Dr. Lance sought petitioner's advice regarding the doctor's own business transactions, as a "second opinion," but had not retained petitioner to represent him. Although he believed petitioner was more innovative and better than his own lawyers in that respect, he felt petitioner was not "fully committed to full-time practice, and . . . I would want anyone I hired to be committed that way."

During a six-month period in 1984 when petitioner was being treated by Dr. Lance, the doctor prescribed an antidepressant medication. He had not opened a file on petitioner, however.

### III.

The record of the proceedings before the State Bar Court reflects a notice to show cause why he should not be disciplined for professional misconduct, stating the charges on which this proceeding is based, served on petitioner on April 10, 1985. That notice was accompanied by a notice of mandatory settlement conference to be held on June 7, 1985. That notice advised petitioner that the parties were obligated to meet and confer at least 10 days before the settlement conference and that: "[U]pon an adequate showing of indigency, counsel may be appointed to represent you. Applications for appointment of counsel should be submitted within thirty days of receipt of this Notice . . . ."

Petitioner conferred with the examiner on an unspecified date, but no settlement was reached. He did not file a response to the charges. The hearing was continued to September 17, 1985, at which time petitioner appeared in propria persona. He had not theretofore requested that counsel be appointed. He was not prepared to proceed on September 17th and the hearing panel suggested that he obtain counsel. The matter was continued to December 10, 1985. Petitioner did not request the appointment of counsel at that time. On December 10, 1985, petitioner again appeared without counsel, and at this appearance stated that he had been unable to afford to retain counsel. It was suggested that he file an application for appointment of counsel. The matter was then continued to January 29, 1986. When he appeared on that date he advised the panel that he had not qualified for appointment of counsel and would retain counsel at his own expense.[3] The matter was again continued, this time to April 8, 1986, at which time petitioner stated that he would represent himself.

The findings, conclusions, and recommendation of the hearing panel were filed on April 30, 1986, and the matter was set for hearing before the review department at its September 1986 meeting. That meeting was held on September 4th and 5th. On September 4th, petitioner served notice on the examiner and the review department that he had filed a bankruptcy petition under chapter 11 in the United States Bankruptcy Court, Central District of California, on July 10, 1986, "and that all proceedings, actions and hearings are automatically stayed by virtue of Section 362(a)(1) of the Bankruptcy

---

[3] Petitioner did not file his application for counsel until January 26, 1986, three days before the hearing date. In the application petitioner declared that his monthly income, including rents was $3,000, with a net after income taxes of $2,500. His assets were declared to be realty valued at $300,000, subject to a first mortgage in that amount, with monthly payments of $2,800. He declared other indebtedness in the form of loans of $85,000, $35,000, and $25,000. Although he did not specify the monthly payments on these loans, he indicated total monthly payments of $4,800, and total monthly expenses of $2,000.

Code." After adopting a formal resolution determining that the disciplinary proceedings were conducted "under the state's police power to protect the health, safety and welfare of its citizens," and thus were not stayed by the bankruptcy proceedings, the review department adopted, with slight modification, the findings of fact and conclusions of the hearing panel of the State Bar Court.

## IV.

■ Petitioner argues first that these disciplinary proceedings were automatically stayed upon his service of notice of his bankruptcy petition. He relies on the automatic stay provision of 11 United States Code section 362(a)(1): "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this . . . title operates as a stay, applicable to all entities, of —

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . ."

Petitioner offers no authority for his interpretation of section 362(a)(1), relying only on a general explanatory statement made in a report of the House of Representatives to the effect that the automatic stay provision is a fundamental protection for a debtor,[4] the scope of which encompasses license revocation proceedings.

We do not agree that attorney disciplinary proceedings fall within the purview of section 362(a)(1). Subsection (b)(4) of the same statute excepts from the automatic stay provision "the commencement or continuation of

---

[4] A summary of that report explains: "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

". . . . . . . . . . . . . . .
"Subsection (a) defines the scope of the automatic stay, by listing the acts that are stayed by the commencement of the case. The commencement or continuation, . . . of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case is stayed under paragraph (1). The scope of this paragraph is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. . . ." (H.R. Rep. No. 95-595, 1st Sess., pp. 340-342 (1977); Sen. Rep. No. 95-989, 2d Sess., pp. 49-51 (1978); See 1 Herzog & King, Bankruptcy Code (1987 Collier pamp. ed.) p. 171.)

an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." That exemption is clearly applicable to State Bar disciplinary proceedings. The same report on which petitioner relies states the scope of the exemption: "Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." (1 Herzog & King, *op. cit. supra,* at p. 174.)

A disciplinary proceeding against a member of the State Bar is not action involving the bankruptcy estate or any asset that might be part of that estate. A certificate of admission to the State Bar is not a transferable license and is not an asset of the debtor. Thus, disciplinary proceedings are not actions to obtain property of the estate. Nor are they actions which will result in giving the estate a pecuniary advantage over creditors of the debtor. The proceedings are for the purpose of protecting the public and are analogous to proceedings initiated for consumer protection, to stop fraud, or to enjoin similar violations of administrative regulations. "[A]ny violation of the oath taken by [an attorney], or of his duties as such attorney, constitute[s] cause[ ] . . . for disbarment or suspension." (Bus. & Prof. Code, § 6103.) The purpose of the disciplinary proceedings authorized by this section "is not to punish, but to protect the public by judging the fitness of the attorney to continue in practice." (*Schultz* v. *State Bar* (1975) 15 Cal.3d 799, 803 [126 Cal.Rptr. 232, 543 P.2d 600]. See also *In re Dedman* (1976) 17 Cal.3d 229, 235 [130 Cal.Rptr. 504, 550 P.2d 1040]; Rules Proc. of State Bar, div. V., Standards for Atty. Sanctions for Prof. Misconduct, std. 1.3.)[5]

One leading authority has suggested that the automatic stay provision should not be construed in a manner that restricts the ability of the state "to apply reasonable standards for licensing persons to carry on professions or trades and to see to minimum competence" (2 Cowans, Bankruptcy Law and Practice (1986 ed.) p. 287), and controlling authority in this jurisdiction adopts that view.

---

[5]Standard 1.3 provides: "The primary purposes of disciplinary proceedings conducted by the State Bar of California and of sanctions imposed upon a finding or acknowledgement of a member's professional misconduct are the protection of the public, the courts and the legal profession; the maintenance of high professional standards by attorneys and the preservation of public confidence in the legal profession. Rehabilitation of a member is a permissible object of a sanction imposed upon the member but only if the imposition of rehabilitative sanctions is consistent with the above-stated primary purposes of sanctions for professional misconduct."

In *In re Thomassen* (Bankr. 9th Cir. 1981) 15 Bankr.Rptr. 907 [5 Collier Bankr.Cas.2d (MB) 997, 8 Bankr.Ct.Dec. (CRR) 530 (1981-1982 Transfer Binder) Bankr.L.Rep. (CCH) ¶ 68,508 (Bankr. D.R.I. 12/1/81)], a United States Bankruptcy Appellate Panel of the Ninth Circuit, held that license revocation proceedings were exempt from the automatic stay imposed in a licensed physician's bankruptcy proceeding. The administrative proceeding alleged that the licensee had engaged in acts of gross negligence or incompetence and acts of dishonesty in financial dealings. He sought to stay those proceedings. The bankruptcy judge held that the revocation proceedings were not automatically stayed and the appellate panel affirmed both that ruling and the refusal of the judge to exercise his discretionary power to enjoin the proceedings. Noting the dichotomy between administrative proceedings for pecuniary purposes and those initiated for regulatory purposes, the panel concluded that "[n]othing in the facts of the instant appeal . . . indicates that the actions of the California Board of Medical Quality Assurance were meant to frustrate the purposes or processes of the Bankruptcy Code. Moreover, that does not seem to have been their effect. Contrary to the assertions of counsel for the debtors, the charges which have been brought against Dr. Thomassen by the California Board of Medical Quality Assurance do not deal with his simple failure to make necessary payments to the state or to its citizens. He has been accused of malpractice and professional incompetence and with fraud in the handling of his patients' and employees' funds. The State's interest in this matter is in punishing such misconduct and in preventing future acts of the type which Dr. Thomassen has been accused. This is a valid police and regulatory interest.

"In this same vein, the Panel believes that the 'license revocation' language found in the above-cited House Report refers to those instances in which a license is to be revoked for some pecuniary reason, not related to the health or safety of the public." (See also *In re Farmers & Ranchers Livestock Auction, Inc.* (Bankr. Cir. 1984) 46 Bankr.Rptr. 781 [investigative and administrative proceedings that could result in suspension of licenses exempt under regulatory and police power exemption to automatic stay].)

Neither the State Bar disciplinary proceeding nor the continuation of that proceeding in this court, therefore, is subject to the automatic stay provisions of 11 United States Code section 362(a).

## V.

None of petitioner's remaining claims warrants departure from the discipline recommended by the review department.

Petitioner's claim that he was misled by statements of the examiner into believing that a settlement might be reached, and that he therefore did not

present as strong a defense as he might otherwise have presented, is not supported by the record. The record establishes that petitioner must have been aware that no settlement had been reached as early as the date first set for the hearing, September 17, 1985. Several continuances of the hearing followed, and, with no settlement or stipulation as to the factual allegations yet achieved, the examiner deposed petitioner on March 14, 1986. Petitioner nowhere explains why, as of April 8, 1986, almost a month later, he continued to believe that a settlement would be reached. In his testimony at the hearing he asserted that he had been discussing settlement with the examiner "as late as the deposition," that the examiner had told him that he would have to "have a strong medical situation," and that he believed he had "presented a pretty good psychiatrist who did treat me, did give me medication." None of this explains why, as of the date of the hearing, when petitioner still had not stipulated to the facts underlying the charges, anything the examiner may have said in the past continued to "mislead" him and to cause him to believe that the matter would be settled.

■ In essence, petitioner's claim is actually that he did not anticipate that the examiner would recommend, at the close of the hearing, that petitioner be disbarred. It is not necessary, of course, that an attorney be advised that disbarment will be requested. The requirement of notice (Bus. & Prof. Code, § 6085) is met by advising him of all of the charges against him. (*Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 737 [187 Cal.Rptr. 30, 653 P.2d 321].) In this case, however, petitioner was on notice that disbarment was contemplated. The examiner testified that he had advised petitioner of the disciplinary possibilities, but that everything he, the examiner, "ever said was that this is a disbarment case in the absence of strong mitigation. I told him it had to be strong mitigation." In the opinion of the examiner petitioner had no basis for saying that he was surprised by the disbarment recommendation. The reality appears to be that petitioner displayed no more diligence in preparing for the hearing than that which he applied to the legal affairs of his clients, and failed to recognize the weakness of his mitigating evidence.

Nothing in the record or the petition for review persuades us that petitioner was misled, or that the record would be different had petitioner not hoped to achieve a settlement. He does not explain now, and did not do so before the hearing panel or review department, what additional evidence in defense or mitigation he could have offered.

■ The record also fails to support petitioner's assertion that the State Bar abused its discretion in finding that he did not qualify for appointment of counsel. The only relevant document found in the record is petitioner's request for appointment of counsel which includes his financial statement.

Petitioner did not make a timely request for appointment of counsel, and even after twice being advised by members of the hearing panel to obtain counsel, made his application only three days before the scheduled January 29, 1986, hearing date. At the proceeding on that date he did not contest the State Bar's decision, and advised the panel only that the State Bar had found that he did not qualify for appointment and would represent himself.[6] Petitioner did not seek reconsideration of the application for appointment of counsel and did not make the response to his application part of the record. We cannot therefore assess his claim that refusal to appoint counsel for him was an abuse of discretion. (See *Dixon* v. *State Bar* (1985) 39 Cal.3d 335, 342-343 [216 Cal.Rptr. 432, 702 P.2d 590].)

Even were we to find an abuse of discretion, this record does not establish that the failure of the State Bar to appoint counsel deprived petitioner of the "reasonable opportunity" to be represented guaranteed by Business and Professions Code section 6085.[7] (See *Hyland* v. *State Bar* (1963) 59 Cal.2d 765, 773-774 [31 Cal.Rptr. 329, 382 P.2d 369].)

## VI.

 It does not appear that the recommendation of disbarment is unwarranted. While we exercise our own judgment in determining the appropriate discipline, we attach great weight to the disciplinary recommendation of the review department. (*Rossman* v. *State Bar* (1985) 39 Cal.3d 539, 545 [216 Cal.Rptr. 919, 703 P.2d 390].) Petitioner bears the burden of showing that the review department's recommendation is erroneous or unlawful. (Bus. & Prof. Code, § 6083, subd. (c); *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].) Each of the charges found true by the review department involved serious misconduct. (See *Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 949-950 [232 Cal.Rptr. 152, 728 P.2d 222].) Some of the circumstances that petitioner claims are mitigating are not established by the record while others are insufficient to contravene the conclusion of the review department that disbarment is the only effective means by which to protect the public.

We consider first the circumstances which petitioner urges as mitigating factors. He asks that we take judicial notice that the quality of his represen-

[6] In his petition for review petitioner bases his claim of abuse of discretion only on testimony he gave at the hearing regarding his income. That testimony was offered in an entirely different context, in response to questions by a panel member.

[7] Petitioner also advised the panel that he had contacted one "well-known" attorney who wanted a retainer of $5,000 which petitioner could not afford. He did not indicate that he had contacted any other attorneys to seek representation.

tation of the plaintiff class in *Chance* v. *Superior Court* (1962) 58 Cal.2d 275 [23 Cal.Rptr. 761, 373 P.2d 849] demonstrates the quality of his legal ability and his use of the law in a case which benefited a great many clients. He suggests that his demonstrated competence, and his prior record of practice for 30 years in which he had no disciplinary proceedings, should be considered as strong mitigating factors.

■ The absence of prior discipline is properly considered as a mitigating factor. (*In re Dedman, supra,* 17 Cal.3d 229, 234.) However, it must be considered in light of the purpose of disciplinary proceedings ". . . to inquire into the fitness of the attorney to continue in that capacity for the protection of the public, the courts, and the legal profession." (*Id.* at p. 235.) Thus, in order to meet his burden of showing that the recommendation of disbarment is erroneous, petitioner must establish that a lesser discipline would be adequate to prevent future serious misconduct. Prior exemplary conduct and a distinguished career may be relevant as factors indicative of the probability that misconduct will not likely recur, but if the attorney guilty of a pattern of serious misconduct does not show that he is presently able to avoid such misconduct, appropriate action must be taken to protect the public. (*Mepham* v. *State Bar, supra,* 42 Cal.3d 943, 948.)

Petitioner suggests that his past unblemished record demonstrates that "something went wrong" in his life during the period in which the misconduct occurred. That something, he argues, was the depression he suffered, a depression that rendered him incapable of functioning in an orderly and professional manner.

When misconduct occurs during a single period of aberrant behavior, an attorney's past discipline-free record is recognized as a factor that suggests that disbarment is not a necessary or appropriate sanction. (See, e.g., *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132-133 [202 Cal.Rptr. 349, 680 P.2d 82].) ■ Were there clear medical evidence that mental or emotional problems caused petitioner to abandon his clients, and that he had now overcome these problems, his past record would unquestionably be relevant to the discipline, if any, necessary to deter future misconduct. The opinion of his treating psychiatrist as to the cause of his problems was equivocal, however, and did not establish that an emotional or psychiatric condition, rather than a growing disinterest in the practice of law, led petitioner to abandon his practice. More importantly, assuming that such condition contributed to the misconduct, Dr. Lance could offer no assurance that petitioner is now capable either of practicing on a full-time basis, or of adequately representing clients who present problems in areas of practice in which petitioner has lost interest.

Therefore, although in other circumstances petitioner's past discipline-free record would be relevant to the degree of discipline to be imposed, the present circumstances are such that a sanction less than disbarment does not offer assurance that the public will be protected.

■ Petitioner also suggests that we consider as mitigating the fact that no "clients" were damaged by his actions. The record does not support that claim. We cannot know the damage that may have resulted from petitioner's inattention to his clients. Delay in resolution of their problems may itself have caused damage.[8] Petitioner points out that the note executed by Ms. G.M. to secure the loan he arranged for her had been found invalid, but this neither establishes that she suffered no loss as a result of the transaction nor acknowledges his role in arranging a loan which left the lender unsecured. And, although petitioner had executed the lien on the client's recovery in the M.L.N. matter, he misappropriated the funds that should have been applied to pay off the medical lien. The record does not establish that neither M.L.M. nor the medical group was harmed. The record does establish that in the M.F.N. matter, the medical group suffered a loss.

Petitioner's argument that the suggested factor, no loss to his clients, should be considered mitigating in the face of evidence that members of the public were harmed by his conduct itself reflects a lack of awareness of the serious nature of his misconduct and the purpose of these proceedings.

We do not consider petitioner's payment of $1,100, representing six months' interest on the note executed by Ms. G.M., a mitigating circumstance. He failed to make any of the installment payments on the loan as he had agreed to do, and the manner in which he arranged to have the loan made, the note executed, and the proceeds distributed constituted a clear breach of his fiduciary duty to Ms. G.M. Similarly, petitioner's eventual return of the client file to Ms. D.B., after she was forced to resort to the State Bar for assistance in locating him, and more than two months after he had promised the return of the file and had failed to respond to her demand letters, can hardly be considered mitigating.

The record does not support petitioner's assertion that financial difficulty contributed to his misconduct. Moreover, his suggestion that the failure of

---

[8] In the D.B. matter, petitioner stated in his deposition that he was retained in regard to visitation rights for her son and nonpayment of support, and bills for special education and medical care. We have observed that delayed resolution of dissolution proceedings often causes prejudice to the parties who may be unable to marry, utilize assets, or establish stable homes for the children of the marriage. (*Mardikian* v. *Commission on Judicial Performance* (1985) 40 Cal.3d 473, 483, fn. 9 [220 Cal.Rptr. 833, 709 P.2d 852].) Similar prejudice may be anticipated in visitation and support proceedings.

the State Bar to provide him with counsel during the disciplinary hearing is a mitigating circumstance reflects a misunderstanding of the nature of factors that may be considered "mitigating." Whether or not that decision constituted an abuse of discretion, it is not relevant to his culpability for the misconduct established at the hearing or to a determination of the appropriate discipline.

 We have given serious consideration to the question of the proper discipline, and to the recommendation of the hearing panel. We agree with the review department that, although the nature of petitioner's transgressions, considered in light of his past discipline-free record, would not warrant disbarment as a disciplinary sanction, his conduct since 1982 offers no assurance that probationary supervision would be adequate to protect the public. He testified that he has practiced "mostly real estate litigation" since 1982, but did not have a trust account at the time of the hearing, and did not have an office. He had a desk and an address available to him if he needed it, but he was "really not practicing that much law at the present time." He testified that he kept his files at 1800 North Highland, and was then attempting to purchase an office building with a group of investors, and would have an office in Santa Monica if successful. The North Highland address had been his office address since 1980 or 1981. It was the address of his former partner in the real estate field who, with the former partner's brother, permitted him to use the office. He characterized the office as "basically" a real estate office. During a colloquy with the examiner and the hearing panel over a possible continuance to permit the examiner to present additional witnesses who had been clients of petitioner, however, petitioner stated that he did not have an office at the time and did not have access to his clients' files. He acknowledged that he was representing those clients in a probate matter, that the clients probably had complained because they wanted their case completed, and he had not contacted them as often as he should have.

Under the circumstances reflected by this record, we doubt that probation supervision can adequately protect the public against future acts of misconduct of the type which have occurred here. The record is equivocal as to whether the misconduct was or is related to a psychiatric problem, or reflects petitioner's continuing disinterest in the practice of law. If the former, there is no evidence that the problem has been overcome. If the latter, nothing in petitioner's behavior in relation to these proceedings or in the evidence offered at the hearing suggests that he is now sufficiently interested in practice to extend to his clients the quality of representation to which they are entitled. Additionally, petitioner has no office, uses the office of a nonlawyer friend as his office mailing address, and although he claims that his files are kept there, he told the hearing panel that he did not have

access to the file of clients whom he acknowledged he was then representing in a probate matter. After-the-fact reporting that he is complying with the Rules of Professional Conduct and receiving psychiatric help does not offer, in this case, assurance the conduct which led to these proceedings will not be repeated.

Petitioner's conduct during these proceedings contributes to our conclusion. His attempt to delay the proceedings, his effort to shift responsibility to the examiner for his inability to offer a defense to the charges, his misstatements of the record,[9] and his seeming unawareness of, or unwillingness to acknowledge, the serious nature of his misconduct, all suggest that a suspension is inadequate as a deterrent.

Accordingly, we adopt the recommendation of the review department. It is ordered that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. It is further ordered that petitioner comply with rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. The order is effective 30 days after the filing of this opinion.

---

[9] For example, he claims in his petition that "during the entire period that these acts occurred, petitioner was under the care of a psychiatrist, Dr. Jerome Lance, for depression and required medication called 'Elavil' for that condition." The record establishes that Dr. Lance first saw petitioner in 1983, and that petitioner took Elavil for sleep and for the depression for only six months in 1984. The conduct underlying the charges here occurred between 1978 and 1982.