**In re E. Gene and Joyzelle I. WADE, Debtors.**

**E. Gene and Joyzelle I. WADE, Appellants,**

v.

**STATE BAR OF ARIZONA, Appellee.**

**BAP No. AZ–88–1870–PVR.**
**BAP No. AZ–89–1298–PVR.**
**Bankruptcy No. B–87–6184 PHX RGM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 18, 1990.

Decided June 18, 1990.

E. Gene and Joyzelle I. Wade, Mesa, Ariz., in pro per.

Margaret D. White, Phoenix, Ariz., for the appellee, State Bar of Arizona.

Before PERRIS, VOLINN, and RUSSELL, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

These appeals arise out of orders relating to the effect of the automatic stay on a disciplinary proceeding brought by the appellee, the Arizona State Bar ("the Bar" or "the Arizona Bar") against the debtor, E. Gene Wade ("the debtor").[1] The bankrupt-

---

1. E. Gene Wade and his wife, Joyzelle I. Wade, are the debtors and appellants in this appeal.

cy court determined that the stay did not apply to the disciplinary proceeding under 11 U.S.C. § 362(b)(4) [2] and entered an order lifting the stay. Along with a motion for a new trial on the relief from the stay issue, the debtors filed a counterclaim seeking damages for the Bar's willful violation of the stay. The bankruptcy court dismissed the counterclaim on procedural grounds. The debtors appealed from the orders lifting the stay and dismissing the counterclaim. We AFFIRM the bankruptcy court's determination that the stay did not apply to the Bar's disciplinary proceedings and we AFFIRM the dismissal of the counterclaim. We REMAND BAP No. AZ–88–1870 for the narrow purpose of reforming the bankruptcy court's order in a manner consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

At all relevant times, the debtor was an attorney and a member of the Bar. On October 1, 1987, the debtors filed a Chapter 11 petition. On October 2, 1987, the Bar initiated formal disciplinary proceedings against the debtor.[3] The debtor had notified the Bar of the filing of the bankruptcy petition.

On June 9, 1988, the Bar moved for relief from the automatic stay for the purpose of allowing the continuation of the pending disciplinary proceeding. The Bar contended that the stay was inapplicable under section 362(b)(4) and alternatively that even if the stay were applicable, relief should be granted for cause under section 362(d)(1). The Bar served the motion on the debtor by mail on June 15, 1988. Under local rule a response was not due until July 5, 1988, four days after the scheduled hearing on the motion. On June 30, 1988, the debtors filed a notice of appearance and intent to file a response by July 5, 1988.

Because Mr. Wade is the only party to the disciplinary proceeding at issue, for the sake of clarity he will be referred to individually as "the debtor." Mr. and Mrs. Wade will be collectively referred to as "the debtors."

At the hearing on July 1, 1988, Judge Mooreman, after hearing that the debtor intended to oppose the motion, indicated that he did not think the automatic stay applied to disciplinary actions and that he would so rule. On the same day, the bankruptcy court entered an "Order re Motion for Relief from Automatic Stay", which ruled that disciplinary proceedings brought by the Bar are excepted from the automatic stay under section 362(b)(4). The order further stated that it was not the final order, but that the Bar should submit a consistent order which, when signed by the court, would be deemed the final order. On July 7, 1988, the bankruptcy court entered an order stating that the automatic stay was lifted as to the Bar for the purpose of allowing it to prosecute disciplinary matters against the debtor.

Along with a timely motion for a new trial and for amendment of the judgment, findings and conclusions, the debtors filed a response to the motion for relief from the stay and a counterclaim against the Bar. The counterclaim sought damages for the Bar's willful violation of the stay and for the Bar's violation of its confidentiality rules in filing the motion for relief from the stay. The Bar moved to dismiss the counterclaim.

After providing the parties a full opportunity to brief and argue their positions, the bankruptcy court, on September 6, 1988, entered an order denying the debtors' motions and ratifying and affirming the Opinion and Order of July 1, 1988 and the Order of July 7, 1988. The debtors filed a timely notice of appeal from the July 7 and September 6 orders (AZ–88–1870).

Subsequently, the debtors moved to stay, during the pendency of their appeal, further proceedings in "Adversary 'E'," the proceeding concerning the relief from the stay matters and the debtors' counterclaim. On February 13, 1989, the bankruptcy court denied the debtors' motion to stay

2. All references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise indicated.

3. The record does not reflect the allegations of nor the relief sought in the disciplinary proceeding.

further proceedings and granted, on procedural grounds, the Bar's motion to dismiss the debtors' counterclaim. In the minute order reflecting its ruling on this issue, the bankruptcy court stated that "it is not necessary for the Court to pass on any issue of substantive law involving the origin of the State Bar of Arizona, it occurring to the Court that this is not an appropriate forum for that type of action." Excerpt of Record ("E.R."), Item 41. Following the denial of the debtors' motion to amend the February 13 Order, the debtors appealed (AZ–89–1298). The Panel consolidated the two appeals for purposes of briefing and oral argument.

## ISSUES

1. Whether the actions of the Bar in commencing and continuing the disciplinary proceeding against the debtor were subject to the automatic stay of section 362.

A. Whether the Bar's disciplinary proceeding is excepted from the stay of proceedings against the debtor under section 362(b)(4).

B. Whether the Bar's disciplinary proceeding is stayed or limited by sections 362(a)(3) or 362(b)(5).

2. Whether the Orders of July 1 and July 7 violated the debtors' due process rights.

3. Whether the bankruptcy court erred in dismissing the debtors' counterclaim

seeking damages for willful violation of the stay.

A. Whether the bankruptcy court was deprived of jurisdiction to dismiss the counterclaim by virtue of the prior appeal.

B. Whether the debtors' counterclaim, filed in response to a motion for relief from the stay, was procedurally appropriate.

## STANDARD OF REVIEW

■ A bankruptcy court's findings of fact will not be reversed unless clearly erroneous. *E.g., In re Lewis,* 79 B.R. 893, 895 (9th Cir.1987). Conclusions of law are subject to *de novo* review. *Id.* Although an order on a motion for relief from the stay is generally reviewed for an abuse of discretion, *see, e.g., In re Can–Alta Properties, Ltd.,* 87 B.R. 89, 91 (9th Cir. BAP 1988), the primary issues on this appeal—whether and to what extent the Bar's disciplinary proceedings are subject to the automatic stay—involve questions of law that we review *de novo.*[4]

## DISCUSSION

1. *Whether the actions of the Bar in commencing and continuing the disciplinary proceeding against the debtor were subject to the automatic stay of section 362.*[5]

As relevant to the substantive issues on appeal, section 362 provides as follows:

**4.** The debtors implicitly characterize the issue whether the bar is a governmental unit within the exception of section 362(b)(4) as an issue of fact by setting out the various characteristics of the bar in its statement of fact and by relying extensively upon an affidavit of the debtor as evidence of those facts. We disagree. The characteristics of the Bar that are relevant to the Panel's determination are those set forth in Supreme Court Rules. The only other source of evidence of these facts is a statement of facts incorporated into the debtor's affidavits. To the extent these facts concern the operation and finances of the Bar, nothing in the record indicated that the debtor has first hand knowledge of these matters or is otherwise competent to testify to such matters. *See* Fed.R.Evid. 602; *see also* B. Russell, *Bankruptcy Evidence Manual* § 602.1 (1987). Thus, the only competent evidence in the record regarding characteristics of the Bar are the Supreme Court Rules. The

construction of those rules to determine the characteristics and status of the bar involves a question of law.

**5.** The July 1 and July 7 orders give conflicting indications of the issues actually resolved by the bankruptcy court. The July 1 order, which ruled that the Bar's proceedings are excepted from the automatic stay, is inconsistent with the July 7 order which purported to grant relief from the automatic stay for cause under section 362(d)(1). Our review of the entire record, together with the parties' comments at oral argument, convinces us that the bankruptcy court actually ruled on only those issues pertaining to the exception to the automatic stay under section 362(b)(4) and did not decide whether cause existed to lift the automatic stay under section 362(d)(1). For this reason, we decline to address the section 362(d)(1) issues on appeal. On remand the July 7 Order should be reformed to

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...

.    .    .    .    .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

.    .    .    .    .

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

.    .    .    .    .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

.    .    .    .    .

The application of these provisions raises two issues: (1) whether the Bar's disciplinary proceeding is excepted from the stay as a proceeding by a governmental unit to

enforce its police or regulatory power and (2) whether the proceeding seeks to obtain property of the estate or enforce a money judgment so that the stay nevertheless applies.

### A.  *Section 362(b)(4).*

■   The bankruptcy court determined that the Bar's disciplinary proceedings are excepted from the automatic stay under section 362(b)(4), implicitly finding that the Bar was a "governmental unit" enforcing its "police or regulatory power." [6]   The debtors contend that the Bar is not a "governmental unit" for purposes of section 362(b)(4).

Section 101(26) provides, in relevant part as follows:

"governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, ..., a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

The legislative history to section 101(26) indicates that this subsection defines "governmental unit" in the broadest sense and further explains the meaning of the term:

"Department, agency, or instrumentality" does not include entities that owe their existence to state action such as the granting of a charter or a license but that have no other connection with a State or local government or the Federal Government.   The relationship must be an active one in which the department, agency or instrumentality is actually

reflect that the bankruptcy court determined the applicability of the stay rather than cause to lift the stay.

**6.** Although a determination that the Bar is a governmental unit is implicit in and necessary to its ruling, the bankruptcy court did not expressly consider the "governmental unit" issue as opposed to the "police or regulatory power" issue in its ruling.   The cases cited by the court focused on the "police or regulatory power" component of section 362(b)(4) and did not expressly address whether the entity at issue was a governmental unit. *See, e.g., In re Thomassen,* 15 B.R. 907 (9th Cir.BAP 1981); *In re*

*Hanson,* 71 B.R. 193 (Bankr.E.D.Wisc.1987). For this reason, the debtor's citation to these cases, as well as *Cooper v. State Bar of California,* 43 Cal.3d 1016, 239 Cal.Rptr. 709, 714, 741 P.2d 206, 211 (1987), is not compelling.   In addition, the fact that the entities involved in the cited cases were implicitly determined to be "governmental units" on the basis of ties that are arguably closer and more direct to the relevant court or legislative body does not compel a conclusion that the Arizona Bar is not a governmental unit when it performs its disciplinary function.

carrying out some governmental function.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 311 (1977), U.S.Code Cong. & Admin.News 1978, p. 6268.

Although there is a paucity of cases expressly addressing what is a "governmental unit" for purposes of section 362(b)(4), this legislative history suggests that courts apply a functional approach by examining whether the entity at issue is carrying out a governmental function. The limited case law suggests that courts should also look to the closeness of the relationship between the government and the entity at issue because the fact that an otherwise private entity is acting in a governmental capacity will not, by itself, make that entity a governmental unit. *See In re Revere Copper and Brass, Inc.,* 32 B.R. 725, 727 (S.D.N.Y. 1983) (corporations bringing a citizens' action under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* as "private attorney generals" were not governmental units under sections 101(26) and 362(b)(4)).

Applying this standard requires an examination of the status, structure and function of the Arizona Bar. The Arizona Bar was originally authorized by the State Bar Act of 1933, A.R.S. § 32–201 (repealed 1985), which provided, *inter alia,* that "there shall be a public corporation known as the State Bar of Arizona." A.R.S. § 32–201. Although the State Bar Act was subsequently found unconstitutional because it violated the constitutional prohibition on the creation of public corporations by special acts, in so finding, the court recognized the continued existence of the Bar under the Arizona Supreme Court's inherent power to integrate the bar of the state and under Arizona Supreme Court Rules that referred to the Bar as an organization. *Bridegroom v. State Bar of Arizona,* 27 Ariz.App. 47, 550 P.2d 1089, 1091 (1976); *see* Ariz.Sup.Ct.R. 27–45 (amended and renumbered 1984). Arizona Sup.Ct.R. ("S.C.R.") 31(a)1 created, perpetuated and continued the Bar and allowed it to be a non-profit corporation under Arizona Law. On December 11, 1987, Articles of Incorporation were filed.

Membership in the Bar is required of all persons engaged in the practice of law in the state of Arizona. S.C.R. 31(a). The Bar is governed by a 21 member Board of Governors (the "Board"), 19 of whom are active members of the Bar elected by other active members and 2 of whom are non-attorney public members who are appointed by the Board. S.C.R. 31(d). Officers of the Bar are elected by the Board from its membership. S.C.R. 31(f).

Disciplinary matters are administered by the Disciplinary Commission of the Supreme Court of Arizona (the "Commission"). S.C.R. 31(h). The Commission consists of seven members of the Bar who are appointed by the Board and two non-lawyers who are appointed by the Arizona Supreme Court ("Supreme Court"). S.C.R. 47(a). Either the Supreme Court or the Board may remove the lawyer members for good cause shown. *Id.* With respect to disciplinary matters, the Board and the Commission exercise the powers and duties set forth in Supreme Court rules. *See* S.C.R. 47(f)-(g). The grounds for discipline, disciplinary sanctions and general procedures in discipline matters are similarly set forth in the rules, *see* S.C.R. 51–53, as are the disciplinary rules, the violation of which provide grounds for sanctions.

Given these characteristics it is clear that the Bar, in the exercise of its disciplinary function, is closely related to the Arizona Supreme Court and is engaged in a government function. The Supreme Court rules recognize the close relationship with respect to disciplinary matters.[7] The Bar is under the direction and control of the Supreme Court, S.C.R. 31(a)1, and enforces

---

7. Although the holdings of such cases are not controlling for present purposes, in other contexts courts have commented upon the close relationship between the Supreme Court and the Arizona Bar. *See, e.g., Bates v. State Bar of Arizona,* 433 U.S. 350, 361, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1976) (noting that the Bar's role in the enforcement of disciplinary rules is defined by the Supreme Court and the Bar acts as the agent of the Supreme Court under its supervision); *Bridegroom,* 550 P.2d at 1069 (describing the Bar as 'an administrative arm' of the Supreme Court).

disciplinary rules promulgated by the Supreme Court using general procedures prescribed by court rules and using a Commission and hearing committees which were constituted under authority of court rules.

The Arizona Supreme Court's close involvement in the disciplinary process also reflects that the regulation of the conduct of attorneys is a government function. The adoption of detailed rules by the Supreme Court regarding the professional standards of attorneys and the procedures for pursuing disciplinary matters recognize the state's interest in such regulation, as does the fact that the Supreme Court is the ultimate trier of fact and law in the enforcement process. *See Bates v. State Bar of Arizona,* 433 U.S. 350, 361, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1976). In perpetuating, creating and continuing the Bar, the Supreme Court was acting within its "inherent power over members of the legal profession as officers of the court." S.C.R. 31(a)1. Thus, the regulation and discipline of attorneys is a matter with which the Supreme Court, an undisputed arm of the state, is vitally interested and is a function in which it has chosen to be involved.

Having determined that the Bar, in performing its disciplinary function, has a sufficiently close and active relationship with the Supreme Court and is engaged in a government function, we conclude that, with respect to the Bar's involvement in disciplinary matters, it is an instrumentality of the Arizona Supreme Court and is therefore a "governmental unit" under section 101(26).[8] There is no serious dispute that the disciplinary proceeding against the debtor was one to enforce the Bar's police or regulatory power. The purpose of attorney discipline is to protect the public, the profession and the administration of justice, *see, e.g., In re Blankenburg,* 143 Ariz. 365, 694 P.2d 195, 197 (1984), rather than to serve any pecuniary interests. Continuation of the proceeding, therefore, falls within the scope of the "police or regulatory power" exception of section 362(b)(4). *See, e.g., Thomassen,* 15 B.R. at 909–10.

## B. Sections 362(a)(3) and (b)(5).

The debtors argue that even if section 362(b)(4) is applicable, the Bar's proceeding is nevertheless stayed or limited by sections 362(a)(3) and 362(b)(5), to which no exceptions apply. They contend that the Bar's proceeding constitutes an act to obtain possession of certain property interests in their law practice that is prohibited by section 362(a)(3). They further contend that the disciplinary proceeding may result in the imposition of a money judgment for restitution, the enforcement or collection of which is stayed by the effect of section 362(b)(5).

■ The debtors' argument with respect to section 362(a)(3) is not well taken. Although the sanction sought in the disciplinary proceeding is not clear from the record, apparently the Bar seeks to revoke, suspend or somehow limit the debtor's license to practice law. To the extent the Bar is attempting to obtain possession of or exercise control over anything, it is the debtor's license to practice law.[9] A nontransferable professional license, such as the one at issue in this case, is not a property interest. *See Wisner v. Wisner,*

**8.** The cases cited by the parties that determine whether an entity is a state agency or engaged in state action for other purposes are not controlling. In determining that the State Bar of Wisconsin was not a state agency for purposes of the Eleventh Amendment's immunity, *Levine v. Supreme Court of Wisconsin,* 679 F.Supp. 1478, 1487–89 (W.D.Wisc.), *rev'd on other grounds,* 864 F.2d 457 (7th Cir.1988), relied heavily upon the financial autonomy of the Bar after indicating that one of the most important factors to consider is the effect on the state treasury of a judgment in favor of the plaintiff. This factor has no relevancy to the present determination; thus, the financial autonomy of the Bar is not a controlling factor for present purposes. Similarly, cases such as *Bates,* dealing with the issue of state action for purposes of an exemption to the Sherman Act, implicate principles of federalism and state sovereignty in a manner different than those principles are implicated in the context of an exception to the automatic stay.

**9.** Arguably, the Bar disciplinary proceeding is not an attempt to obtain possession of or exercise control over the license. *See In re Kish,* 41 B.R. 620, 623 (Bankr.E.D.Mich.1984) (proceeding to revoke a license was not an attempt to obtain property of the estate).

129 Ariz. 333, 631 P.2d 115 (App.1981); *see also In re D.H. Overmyer Telecasting Co.*, 35 B.R. 400, 401 (Bankr.N.D.Ohio 1983) (a right granted by a government agency subject to use and transferability restrictions is not a property interest). To the extent that the debtor or his wife has a property interest in the law practice, including its stock or goodwill, the Bar is not attempting to obtain or exercise possession over those assets.

■ With respect to the debtors' section 362(b)(5) argument, the parties agree that the effect of that section is to prevent a governmental unit from enforcing a money judgment, even if that judgment is obtained in the exercise of the unit's police or regulatory power. *See, e.g., In re Sam Daily Realty, Inc.*, 57 B.R. 83, 86 (Bankr. D.Haw.1985). In this regard, the bankruptcy court's order is overly broad as it could be construed to allow such enforcement attempts. We therefore remand to the bankruptcy court for the purpose of reforming the order to provide that the exception of section 362(b)(4) does not apply to the Bar's attempts to enforce a money judgment.

2. *Whether the Orders of July 1 and July 7 violated the debtors' due process rights.*

■ The debtors contend that the bankruptcy court violated their due process rights by granting the motion at the initial hearing and entering the orders of July 1 and July 7 without providing them an opportunity to respond to the Bar's motion for relief from the stay and without considering any of their opposing arguments. Essentially, the debtors complain that they were not allowed the 15 days afforded by local rule to respond to the motion for relief from the stay.

Debtors' arguments do not provide an independent basis to reverse the bankruptcy court. The debtors are correct that the bankruptcy court's actions did not comport with local bankruptcy rules, which allowed the debtor 15 days after service of the motion to respond. *See* Local Bankruptcy Rule 4001(b). This 15 day period expired on July 5, 1988, four days after the hearing. By deciding the motion prior to the expiration of the period, the bankruptcy court violated the spirit if not the letter of the rule.

Failing to comply with the local rule, however, was the extent of the bankruptcy court's error. The Code and the national Bankruptcy Rules require "notice and a hearing" prior to granting relief from the stay. Section 362(d); *see* Bankruptcy Rules 4001(a) and 9014. The Code defines "after notice and hearing" and similar phrases to mean such notice and opportunity for a hearing as is appropriate in the particular circumstances. Section 102(1). Similarly, as the parties recognize, due process is a flexible concept that calls for such protection as the situation demands. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In this case, the Bar served the debtors by mail with the motion and a notice of the hearing 15 days prior to the hearing. Taking into consideration the additional three days for service by mail, this was not a sufficient period of time to allow the debtors the full number of days afforded by local rules. Under the facts and circumstances of this case, however, the notice and the opportunity to respond and be heard afforded by the hearing on 15 days notice was sufficient for due process and the Code. Thus, even if the debtors' interest in the automatic stay is a property interest protected by the due process clause, the debtors arguments that the bankruptcy court did not comply with due process must fail.

■ Furthermore, the violation of local rule and any purported violation of due process was remedied by subsequent proceedings. In the debtors' motion for a new trial and response to the motion for relief from the stay, the debtors raised the legal and factual arguments which purportedly supported their opposition to relief from the stay. In denying the motion for a new trial and related motions, the bankruptcy court considered these arguments and ratified and approved the prior orders. The

bankruptcy court thereby afforded the debtors an opportunity to be heard that remedied any error.[10]

3. *Whether the bankruptcy court erred in dismissing the debtors' counterclaim seeking damages for willful violation of the stay.*

A. *Whether the bankruptcy court was deprived of jurisdiction to dismiss the counterclaim by virtue of the prior appeal.*

■ The debtors contend that the fact that the orders of July 1 and July 7 had been appealed deprived the bankruptcy court of jurisdiction to dismiss the counterclaims. The general rule is that the filing of a notice of appeal divests the trial court of jurisdiction over the matters appealed. *Donovan v. Mazzola,* 761 F.2d 1411, 1414 (9th Cir.1985). The appeal of an order does not, however, deprive the trial court of jurisdiction over issues not raised in that order. *Id.* at 1415. In this case, the issues in the first appeal (No. AZ–88–1870) involved whether the conduct of the Bar was excepted from the automatic stay, whether relief from the stay should be granted and whether the debtors' due process rights were violated. The motion to dismiss the counterclaim involved whether the counterclaim was procedurally correct and whether the debtors were collaterally estopped from re-litigating the applicability of section 362(b)(4). Although the issues involved in the motion to dismiss the counterclaim were closely related to the issues involved in the first appeal, they were not the same issues. Accordingly, the bankruptcy court retained jurisdiction to decide the motion to dismiss the counterclaims.

B. *Whether the debtors' counterclaim, filed in response to a motion for relief from the stay, was procedurally appropriate.*

■ The bankruptcy court dismissed, on procedural grounds, the debtors' counterclaim seeking damages for violation of the automatic stay apparently because the relief from the stay motion was a contested matter in which a counterclaim was not appropriate. The debtors contend that the bankruptcy court erred in this regard because the Bar's motion for relief from the stay was, in substance, a request for a declaratory judgment on the applicability of the automatic stay and therefore an adversary proceeding.

■ The Bar's request for relief from the stay was a contested matter that was properly commenced by a motion. Bankruptcy Rules 4001(a) and 9014. The fact that the Bar alternatively contended that the stay did not apply did not change this into an adversary proceeding. Bankruptcy courts regularly hear motions for relief from the stay where a party contends in the alternative that the stay does not apply, but that if it does it should be lifted. The policies favoring expedited relief apply equally to such alternative motions as to motions which request only that the stay be lifted. Framing the request for relief in such a manner, therefore, should not convert the dispute into one that should be determined in an adversary proceeding. Given that the Bar's request for relief was properly brought as a motion, the debtors' counterclaim was procedurally inappropriate. Aside from the procedural irregularity of filing a counterclaim in response to a motion when there is no adversary proceeding pending, the assertion of counterclaims in relief from the stay litigation is improp-

---

10. The debtors' citations to authorities indicating that the opportunity to be heard must occur when the interest is at stake and before the judgment do not compel a contrary result. In the first place, none of the cited authorities deal with a situation similar to the present one where the decision maker re-examined the earlier decision. Additionally, the debtor has not explained what protected property interest was taken by the orders of July 7 and July 1. Finally, consistent with the flexible approach to due

process, whether a post-judgment inquiry can serve to remedy a purported violation of due process depends upon the circumstances involved. *See, e.g., Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). Where only property rights are involved, postponement of the judicial inquiry until after the property is taken is not a denial of due process if the opportunity given for the ultimate judicial determination is adequate. *Id.* at 596–97, 51 S.Ct. at 611.

er. *See, e.g.,* 8 *Collier on Bankruptcy* ¶ 4001.03[2] at 4001–15 (15th ed. 1989). The bankruptcy court correctly dismissed the counterclaims on procedural grounds.

## CONCLUSION

We AFFIRM the bankruptcy court's ruling that the Bar's disciplinary proceedings are excepted from the automatic stay under section 362(b)(4). We further conclude that although the Bar's disciplinary proceeding was not an act to obtain property of the estate under section 362(a)(3), should the Bar attempt to enforce any money judgment it obtains for restitution or otherwise, such efforts would not be excepted from the stay. To make the order clear in this respect we REMAND BAP No. AZ–88–1870 to the bankruptcy court with instructions to reform its orders in this regard and to reform its order of July 7 to reflect that the bankruptcy court determined the applicability of the stay rather than cause to lift the stay. With respect to BAP No. AZ–89–1298, we conclude that the bankruptcy court acted within its jurisdiction in properly dismissing the counterclaims on procedural grounds and that the bankruptcy court's decision be AFFIRMED.