In re Edwin QUIÑONES RIVERA, Maria Teresa Porrata, Debtors.

Hector SANTANA OLMO, Plaintiff,

v.

Edwin QUIÑONES RIVERA, et al., Defendants.

Civ. No. 95–1038(SEC).

United States District Court, D. Puerto Rico.

June 13, 1995.

---

Charles A. Cuprill–Hernandez, Ponce, PR, Edgardo Muñoz–Maldonado, Garcia & Fernandez Law Offices, Hato Rey, PR, for Edwin Quiñones Rivera, Maria Teresa Porrata.

Maria L. Contreras, San Juan, PR, for Héctor Santana Olmo.

Alejandro Oliveras, Asst. U.S. Trustee, Hato Rey, PR.

Jesús Jiménez, Santurce, PR, pro se.

## OPINION AND ORDER

CASELLAS, District Judge.

This case is before the Court on appeal from an Opinion and Order of the United States Bankruptcy Court for the District of Puerto Rico, Lamoutte, J., granting appellee's motion for summary judgment and accordingly denying appellants' discharge under 11 U.S.C. § 727(a)(4)(A). The parties agree that this Court has jurisdiction to entertain this appeal under 28 U.S.C. § 158(a) and Rules 8001(a) and 8002(a) of the Federal Rules of Bankruptcy Procedure.

## *PROCEDURAL BACKGROUND* [1]

Appellants filed a joint petition for relief under the provisions of Chapter 7 of the Bankruptcy Code on September 6, 1990. In its notice of the commencement of the suit, the Bankruptcy Court scheduled the Section 341(a) meeting of creditors for November 6, 1990, and consequently established the filing deadline for complaints under 11 U.S.C. § 523 and § 727 as January 7, 1991. At that time, Mr. Jesús Jiménez was appointed as trustee for the duration of the Chapter 7 proceedings.[2] For their part, appellants filed schedules in compliance with Bankruptcy Rule 1007 on November 2, 1991, listing their assets and liabilities. Among their liabilities, appellants included appellee Héctor Santana Olmo as an undisputed creditor with a claim for $385,000.00 plus interest, as a result of a judgment issued by the Commonwealth's Superior Court in 1989.[3]

On January 7, 1991, the last day to file objections under 11 U.S.C. § 727, appellee Santana Olmo filed a motion requesting an additional sixty (60) days to file objections to appellants' discharge, pursuant to Bankruptcy Rule 4004(b).[4] The reason adduced as a justification for the request was that according to appellee's records, and upon information and belief, further discovery was needed to expediently pursue the case. Appellee's motion for an extension of time was not

1. These facts are undisputed.

2. Curiously, although present since the very early stages of this controversy, the trustee has remained conspicuously absent from this particular debate, choosing to express no view regarding the substantive issues involved in this case.

3. Appellee is currently serving a prison sentence in a stateside federal institution after pleading guilty to a drug-related felony. The Superior Court judgment is meant to compensate him for damages allegedly suffered as a result of Mr. Edwin Quiñones' negligent representation as his attorney and financial advisor.

4. Bankruptcy Rule 4004(b) provides as follows:

"On motion of any party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired."

served upon appellants. Nevertheless, on January 10, 1991, three days after appellee moved for additional time to file a complaint, the Bankruptcy Court granted his request via margin order. Meanwhile, unaware that appellee's request had been granted, appellants filed on January 14, 1995 an opposition to said motion, attacking appellee's statement regarding the perceived need for further discovery as an insufficient basis upon which to grant such an extension of time. Appellants further charged that no good cause was shown, as required by Bankruptcy Rule 4004(b), so as to warrant an additional sixty (60) day extension of the previous deadline.

The Bankruptcy Court seemingly agreed with appellants, at least in part, for on January 17, 1991 it limited the sixty (60) day extension originally granted to appellee to thirty (30) days, counting from the date of issuance of the order granting the original extension of sixty (60) days. The new deadline was therefore set to expire on February 9, 1991.[5] Despite the new deadline however, appellee's complaint objecting to appellants' discharge was not filed until March 4, 1991. In order to excuse this delay, appellee attached a verified statement from his then counsel attesting to the fact that he did not receive the margin order limiting the extension to thirty (30) days until after the thirty days had elapsed.

In essence, the complaint consisted of two separate objections to appellants discharge. The first, predicated on 11 U.S.C. § 727(a)(2)(A), charged that during the year prior to appellants' bankruptcy petition, they allowed the holder of a second mortgage to acquire a piece of property owned by them for less than its value at a public sale, thereby hindering and delaying the trustee and creditors. In the alternative, appellee objected to the discharge on the grounds that appellants had failed to keep adequate financial records from which their financial condition could be accurately ascertained. 11 U.S.C. § 727(a)(3).

On January 13, 1992, the Bankruptcy Court, addressing appellants' motion to dis-

miss the complaint as time-barred, issued an opinion and order vacating its order shortening the extension of time to thirty days and restoring its original sixty (60) day extension, thereby allowing appellee's complaint as timely and denying appellants' motion to dismiss on these grounds. Thereafter, appellee requested leave to amend the complaint to include an additional objection to discharge based on 11 U.S.C. § 727(a)(4)(A), alleging that appellants knowingly and fraudulently made false oaths in connection with their schedule of assets and liabilities filed in this case. Over appellants' objections, the Bankruptcy Court on June 16, 1993 entered an interlocutory order allowing the amendments to the complaint.

On November 16, 1993, appellee filed a motion for summary judgment alleging that, specifically as to the causes of action under sections § 727(a)(3) and § 727(a)(4)(A), there existed no material facts in controversy and that the same could be decided as a matter of law. On January 5, 1994 appellants opposed said motion. On October 12, 1994, the Bankruptcy Court entered the opinion and order subject of this appeal, denying appellants' discharge pursuant to § 727(a)(4)(A) and finding that appellants knowingly and fraudulently made a false oath by signing and filing their schedules and statement under penalty of perjury, even though the financial information contained therein was not complete and accurate. On November 1, 1994, judgment was entered in accordance with the Bankruptcy Court's opinion and order.

■ As a preliminary matter, the Court finds the procedural history of this case a bit worrisome. As noted above, the Bankruptcy Court improperly extended the deadline to file objections to discharge by an additional sixty (60) days without notice to appellants as required by Bankruptcy Rule 4004(b). *See In re Coggin,* 30 F.3d 1443, 1450 (11th Cir. 1994). In addition, no hearing was scheduled in compliance with Rule 4004(b) to afford appellants an opportunity to present to the Court their objections to said extension. In fact, as the Bankruptcy Court granted the

---

**5.** Significantly, at no time did the Bankruptcy Court convene a hearing on this matter as required by Bankruptcy Rule 4004(b).

requested extension only three days after appellee's motion was filed, appellants were not even afforded the ten day period prescribed by Local Rule 311.5 to respond to appellee's petition to the Court. Moreover, although the Court upon first receiving appellants' objections moved up the extended deadline, it eventually granted appellee the full sixty day period based on equitable grounds, thereby allowing his complaint to be filed and judged on its merits.

In an attempt to justify the actions of the Bankruptcy Court in extending the deadline without notice and a hearing, contrary to the plain language of Rule 4004(b), appellee cites *In re Wade*, 115 B.R. 222 (9th Cir. BAP 1990), *aff'd*, 948 F.2d 1122 (9th Cir.1991), where in the context of disciplinary actions brought against debtor in bankruptcy by the Arizona State Bar, the bankruptcy court entered an order lifting the automatic stay allegedly without providing debtors with an opportunity to respond to the Bar's motion and without considering any of their opposing arguments. On appeal, the United States Bankruptcy Appellate Panel of the Ninth Circuit affirmed, holding that under the facts and circumstances of that case, the notice and opportunity to be heard afforded to debtors was sufficient to comply with due process and the relevant provisions of the Bankruptcy Code. Significantly however, in *Wade* debtors had in fact received *notice* of the Bar's motion fifteen (15) days prior to the *hearing* on the matter. In contrast, appellants in this case did not receive notice of appellee's motion until *after* the Bankruptcy Court had granted the sixty (60) day extension, and in fact were *never* granted a hearing on the matter. This crucial distinction between the factual scenario in the *Wade* case and the instant controversy raises due process concerns which are scarcely ameliorated by the temporary measures taken by the Bankruptcy Court to shorten the extension to thirty (30) days.

■ Moreover, Bankruptcy Rule 4004(b) states that the deadline for filing complaints objecting to discharge may be extended only for cause. In this case, appellee requested an extension of time on the basis that additional discovery was needed to "expediently pursue this case." Although the rule does not elaborate as to what may constitute cause, commentators have suggested that when a party has sufficient notice and information to file an objection in time, no extension is appropriate. *See* 8 *Collier on Bankruptcy* § 4004.04[2] (1994). Here, appellants' Chapter 7 petition was filed on September 6, 1990 and the section 341(a) meeting of creditors was held on November 6, 1990. Appellee made no appearance in this case, and apparently no attempts at discovery, until his motion for extension of the deadline for objecting to discharge on January 7, 1991. Under these circumstances, the Bankruptcy Court would have been justified to deny appellee's request for an extension. *See Matter of Boucher*, 728 F.2d 1152 (8th Cir.1984).

■ Furthermore, the Court is skeptical that appellee's statement to the effect that more discovery was necessary, without more, constituted sufficient cause to warrant an extension of the deadline for objecting to debtors' discharge under Bankruptcy Rule 4004(b).[6] By allowing a statement such as "more discovery is necessary" to provide cause for an extension of the deadline imposed by Bankruptcy Rule 4004(a), courts run the risk of authorizing, and by lending their imprimatur, legitimizing what in some instances may amount to nothing more than fishing expeditions on the part of creditors. Courts should be wary of giving such a broad and expansive definition to the concept of cause under these circumstances. After all, the Congressional intent when enacting the new rules pertaining to dischargeability was precisely to protect the debtor from the harassment of certain creditors who insisted that their claims were nondischargeable on the grounds of fraud and false statements. *See In re Kirsch*, 65 B.R. 297, 300 (N.D.Ill.

**6.** Notably, appellee did not claim that the examination of the debtor was not complete, or that additional information or documents had been sought from the debtor and not supplied, or that the affairs of the debtor were so complex as to warrant additional time to investigate them. *See* 9 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* pp. 285–86 (1994).

1986); *Matter of Coffey*, 73 B.R. 340 (D.P.R. 1987).[7]

Notwithstanding the above, we are hesitant to reverse and remand the case to the Bankruptcy Court solely on these grounds, in view of the recent jurisprudence of other circuits tending to allow a certain measure of equitable leniency in the application of deadlines for objections to discharge when the creditor has been mistakenly lulled to inaction by the actions of the Bankruptcy Court itself. *See In re Themy*, 6 F.3d 688 (10th Cir.1993); *In re Isaacman*, 26 F.3d 629 (6th Cir.1994). But see *In re Coggin*, 30 F.3d 1443 (11th Cir.1994) (*ex parte* extension of bar date deemed valid only after court granted debtor notice and a hearing); *In re Santos*, 112 B.R. 1001 (9th Cir. BAP 1990) (equitable doctrines must be applied in a manner consistent with the plain language of the Rules, the purposes served by them, and with a mind to their strict construction). As it is however, we are compelled to remand the case back to the Bankruptcy Court anyway, for we find on the merits that appellants are entitled to a hearing on the issues raised by appellee's complaint objecting to discharge.

### STANDARD OF REVIEW

On appeal, we review the order granting summary judgment *de novo*. *In re Varrasso*, 37 F.3d 760, 763 (1st Cir.1994). By its express terms, Bankruptcy Rule 7056 incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 762. According to Fed.R.Civ.P. 56, a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28, 32 (1st Cir.1994). This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992). *See also, Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 684 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684. As a practical matter therefore, summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not compelled by

---

7. The efficient administration of the bankruptcy estate depends on the imposition and, it follows, the enforcement of deadlines. *In re Collins*, 173 B.R. 251, 252 (Bankr.D.N.H.1994). Prompt deadlines serve the purpose of the Bankruptcy Code and Rules, which is to quickly and effectively settle bankrupt estates. *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 471–72, 15 L.Ed.2d 391 (1966). Both the debtor and the creditors benefit from the expeditious resolution of the creditors' claims and determination of the debtor's repayment terms. *In re Collins*, 173 B.R. at 252. Consequently, as these deadlines

are necessary to protect the debtor as well as the creditors, exceptions cannot be made every time a creditor claims hardship. *In re Robintech, Inc.*, 863 F.2d 393, 397–98 (5th Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). In this case, the net effect of the Bankruptcy Court's extraordinary flexibility regarding the imposition of deadlines for objections to discharge is that a bankruptcy petition filed on September 6, 1990 remains unresolved as of June 1995. Plainly, the purpose of the Bankruptcy Code and Rules has been soundly defeated in this instance.

the record. *In re Varrasso,* 37 F.3d at 763. Cognizant of the above cited standard, we turn now to the merits of the parties' contentions, to assess whether summary judgment was appropriate as a matter of law.

## DISCUSSION

 Appellee moved below for summary judgment specifically on two of the causes of action included in his amended complaint, to wit, those under 11 U.S.C. § 727(a)(3) and § 727(a)(4)(A). With regard to appellee's objection to discharge under 11 U.S.C. § 727(a)(3), the Bankruptcy Court pronounced itself as follows:

The office employs Mr. Quiñones as a practicing attorney plus a secretary and messenger. A separate bank account for business purposes exists where client fees are deposited and from which business expenditures are disbursed. By plaintiff's own admission, this system was adequate insofar as debtors' financial condition could be fairly assessed from the records provided by them. Generally, discharge may not be denied even though debtor did not maintain books as long as debtor's financial condition and business transactions could be ascertained from the various records and memoranda provided by the debtors. 4 *Collier on Bankruptcy* § 727.03[3] (1994).

Accordingly, plaintiff has failed to carry its burden by sufficiently establishing all the elements necessary to sustain an objection to discharge pursuant to 11 U.S.C. § 727(a)(3), thereby precluding summary judgment as to this objection.

The Court then went on to grant appellee's motion for summary judgment on the cause of action based on 11 U.S.C. § 727(a)(4)(A). In doing so, the Bankruptcy Court correctly recognized the principle that the existence of false or inaccurate statements is not, in and of itself, sufficient cause to deny a debtor's discharge unless it is shown that these were knowingly and fraudulently made. *See In re Haverland,* 150 B.R. 768, 770 (S.D.Cal.1993); *In re Burgess,* 955 F.2d 134, 136 (1st Cir. 1992); *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987). Similarly, the Court acknowledged that where the omission is the result of mistake or inadvertence, denial of discharge should not result. 4 *Collier on Bankruptcy* § 727.04[1A] (1994). In granting appellee's motion for summary judgment however, the Bankruptcy Court concluded that appellants' conduct itself evidenced an intent to defraud. The Court explained that fraudulent intent may be established by circumstantial evidence or by inferences drawn from a debtor's behavior. *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985); *Matter of Reed,* 700 F.2d 986, 991 (5th Cir.1983); *In re Harlow,* 107 B.R. 528, 531 (W.D.Va.1989). Moreover—the Court added—fraudulent intent may also be inferred from a pattern of behavior exhibited by the debtor. *In re Schnurr,* 107 B.R. 124, 129 (W.D.Tex.1989). Behavior exhibiting a "reckless indifference to the truth" is equivalent to fraud for purposes of § 727(a)(4)(A). *Diorio v. Kreisler–Borg Construction Co.,* 407 F.2d 1330, 1331 (2d Cir.1969); *In re Tully,* 818 F.2d at 112.

The Bankruptcy Court based its decision denying appellants' discharge under section § 727(a)(4)(A) on several instances where appellants allegedly included false information in their Statement and Schedules signed under oath and filed on November 2, 1990. The Court highlighted in its Opinion and Order a few examples of those for which, in the Court's opinion, there was no plausible explanation, beginning with appellants' failure to list a bank account at Ponce Federal Bank, F.S.B. ("Ponce Federal") in their answer to question number 7 of their statement. This account received deposits of $103,125.46 during the year preceding debtor's Chapter 7 petition. Appellants' position is that they inadvertently excluded the information on this account from the schedule, owing to the fact that the account had been used only from July to December 1989, primarily for the deposit of proceeds from a construction loan obtained from Ponce Federal rather than income, and the account was inactive for the nine months previous to appellants' bankruptcy petition. In addition, appellants noted that as soon as the involuntary omission was discovered, they freely and voluntarily surrendered all related information to appellee, at the time of appellants' depositions. The account had a $2,087.39

overdraft at the time of the filing of the Chapter 7 petition.

▇▇▇▇ The Bankruptcy Court dismissed Mr. Quiñones' explanation on the basis of his business acumen and educational background, holding that while such an explanation might be acceptable coming from someone not versed in business matters, it was incredible in the context of this controversy. In this regard, the Court stated:

As the facts evidence, Mr. Quiñones has considerable business acumen and has obtained a law degree. Mr. Quiñones owns his practice and it can reasonably be presumed that he has had some experience in managing the financial affairs of his office. His testimony further indicates that he completes his own taxes and has been involved in coordinating and securing financing for very lucrative investment adventures for clients although he denies being directly involved in financial planning.

The irony of this passage from the Bankruptcy Court's opinion is overwhelming. On the one hand, Mr. Edwin Quiñones is considered by one court to be so incompetent and negligent as an attorney and financial advisor to appellee, that a judgment is rendered against him to the tune of several hundred thousand dollars, which is in essence the claim that gives appellee standing to pursue this very action, while on the other hand, the Bankruptcy Court emphasizes his "considerable business acumen" and his *presumed* experience in sound financial management, in summarily dismissing his claims of inadvertence as incredible. Quite apart from the obvious impropriety of basing a summary judgment decision on credibility issues and presumed facts, the Bankruptcy Court erred in not drawing reasonable inferences in debtor's favor. *See In re Varrasso*, 37 F.3d 760, 763 (1st Cir.1994).[8] As noted by the First Circuit in *Varrasso*, undisputed facts do not always point unerringly to a single, inevitable conclusion, and when facts are capable of supporting conflicting yet plausible inferences—inferences that are capable of leading a rational factfinder to different outcomes in

a litigated matter depending on which of them the factfinder draws—then the choice between those inferences is not for the court on summary judgment. *Id.* at 764. Here, the undisputed facts conclusively demonstrate the omission of certain assets and liabilities from the schedules, but beyond that, the facts are consistent with an inference of deliberateness or an inference of carelessness. *Id.* at 764. The same can be said for several of the remaining examples cited by the Bankruptcy Court as justification for the denial of appellants' discharge.

▇▇▇▇ The Bankruptcy Court's opinion makes reference to the fact that appellants omitted payments made to credit cards and balances due on Ponce Federal's Visa and Master Cards, as well as on Banco Popular's Master Card. Appellants indicated that payments to credit cards had inadvertently been omitted, but that the total due on the cards issued by Ponce Federal was included in the schedules, wherein Ponce Federal was listed as a creditor with a claim totalling approximately $280,000.00, which included the amounts of the construction loan plus interest (approximately $250,000.00), and the balance owed for the credit cards (approximately $22,000.00). Moreover, specifically with regard to the unlisted balance due on the credit card issued by Banco Popular, Quiñones explained that no amounts were included because his belief was that no balance was due at the time. Appellants further point out that in response to appellee's concerns, the schedules were amended to correctly reflect these amounts. Despite appellants' explications however, the Bankruptcy Court was unpersuaded that these miscues were unintentional. Instead, it frowned upon appellants' failure to include the records of credit card payments in their original schedules. In this respect it wrote:

Even if the court were to accept debtors' foregoing assertion, no explanation is given for the omission of the record of payments for all the credit cards. It is a fact that cancelled checks were relied upon to recreate debtors' financial condition for the year

8. In fairness to the Bankruptcy Court, the First Circuit's decision in this case came shortly after the Court's Opinion and Order granting appel-lee's motion for summary judgment was filed on October 12, 1994.

preceding the filing of bankruptcy. Given that payments to credit cards occurred during that 12 month period, it appears that debtors selectively removed those checks used to pay the credit cards as these were interspersed among all others issued by them for both their business and personal expenses. This clearly indicates debtors' conscious intention of concealing the liability and directly contradicts the explanation that these omissions were due to inadvertence.

As shown by the above quoted excerpt, the Bankruptcy Court gleaned appellants' fraudulent intent from the fact that "debtors selectively removed those checks used to pay the credit cards" in order to conceal their existence. Clearly, should appellee establish the fact that debtors actually and deliberately concealed these checks, the Court could reasonably infer debtors' fraudulent intent for purposes of 11 U.S.C. § 727(a)(4)(A). *See In re Varrasso*, 37 F.3d at 764; *Putnam Resources v. Pateman*, 958 F.2d 448, 459 (1st Cir.1992). As it is however, appellee has not offered any evidence to support such an allegation, other than the simple undisputed fact that payments to the credit cards were not disclosed in debtors' original schedules. While we do not doubt that a factfinder might draw an inference of fraud from this fact alone, as did the Bankruptcy Court, we simply do not believe that this evidence compels such a finding. Therefore, summary judgment should not have been granted. *See In re Varrasso*, 37 F.3d at 764–765.

■ The Bankruptcy Court relied on a few additional examples of instances where appellants allegedly misrepresented their financial condition. One such example is the fact that appellants indicated they had $0 cash on hand at the time of their bankruptcy petition, when they had cashed a check for $3,300.00 and withdrawn an additional $120.00 from an automatic teller machine on the eve of filing their petition. Similarly, the Court considered the fact that appellants initially listed the value of Mr. Quiñones' law library as fifty ($50) dollars and only eventually amended their schedules to reflect a market value of $1,750.00, as further evidence of appellants' fraudulent intent. In doing so, the Court found debtors' explana-

tions contrary to all reasonable inferences drawn from their behavior. Specifically with respect to the book collection, the Court was unpersuaded by debtors' arguments that they believed a portion of the collection represented no value to the estate because of impending repossession by West Publishing. Again the Court cited Mr. Quiñones' legal education, and his ability to understand and research the law, as a factor in denying credibility to appellants' position. We are not convinced however that these facts necessarily lead to the inexorable conclusion that appellants knowingly and fraudulently included false statements in their schedules. For one thing, this is not a case where the assets at issue are of significant worth or have been completely omitted from the schedules. Although the West collection was valued at fifty ($50) dollars in the initial schedules, these were subsequently amended to show that the collection had an approximate value of $1,750.00, as per the appraisal made by the librarian of the Commonwealth's Superior Court, Carolina Section. In addition, as in *Varrasso*, the assets here are of relatively small value, especially when compared to the overall debt, totalling over $900,000.00. "Consequently, debtors had far more to lose than to gain by playing fast and loose with the schedules." *Id.* at 764.

■ Courts must be exceptionally cautious in granting *brevis* disposition in cases where elusive concepts such as motive or intent are at issue, especially when, as here, the movant bears the burden of persuasion as to the nonmovant's state of mind. *In re Varrasso*, 37 F.3d at 764. Here, the undisputed facts require a choice between competing inferences, and in the Court's opinion both inferences are plausible. Consequently, mindful of the First Circuit's admonition, and cognizant of the fact that all choices between available inferences are matters beyond the ken of the court on summary judgment, we hold that the Bankruptcy Court erred in granting appellee's motion for summary judgment. *Id.*

Finally, the Bankruptcy Court also relied on the fact that debtors' original schedule of current income and current expenditures re-

flected a monthly income of $9,000.00 and expenditures of $9,070.00, when in fact the record revealed that during the first ten months of 1990 (debtors' bankruptcy petition was filed in September 1990) their monthly expenses averaged $15,055.05. In addition, the record shows that debtors' monthly expenditures averaged $16,316.98 in 1991, the year after the petition was filed. The Court dismissed Mr. Quiñones' explanations that the original schedules reflected what at the time of the petition appellants believed and estimated would be their likely future income and expenses. Appellants noted that these estimates took into consideration the fact that Quiñones' income is not based on a salary or monthly commission, but rather it depends on the number of clients who retain his services during each particular month. Quiñones also pointed out that at the time, he thought his bankruptcy petition, and its attendant publicity, would have a negative impact on his law practice. The Bankruptcy Court refused to lend credence to appellants' representations however, because the figures in the original schedules were underestimated by as much as seventy-five percent. It further dismissed appellants' allegations that they thought their earnings would drop as a result of adverse publicity stemming from their bankruptcy petition as nonsensical and disingenuous.

As noted above, courts may not weigh the evidence under the banner of summary judgment. *Casas Office Machines*, 42 F.3d at 684. Summary judgment admits of no room for credibility determinations. *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d at 936. More importantly, throughout this analysis the Court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis*, 909 F.2d 628, 633–34 (1st Cir.1990). Applying this standard, it is evident that these facts give rise to conflicting yet plausible infer-

ences which might lead a rational factfinder to different conclusions depending on which of them the factfinder draws. *In re Varrasso*, 37 F.3d at 764. As all choices between available inferences are matters to be left for the jury, not matters to be decided by the court on summary judgment, we hold that the Bankruptcy Court erred in finding as a matter of law that appellants knowingly and fraudulently made a false oath in connection with their bankruptcy petition. *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994).

## CONCLUSION

We need go no further. The Bankruptcy Court did not base its holding on any one omission or inaccuracy in appellants' original schedules. Rather, it held that the omissions, taken together, support the finding that debtors made a false oath with reckless disregard for the truth concerning matters material to their case. As shown by the above discussion however, we have pointed out how the Bankruptcy Court succumbed to the temptation of indulging in impermissible credibility determinations and otherwise refrained from drawing reasonable inferences in favor of appellants. *See Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 934 (1st Cir.1987). Therefore, for the reasons set forth above, we find that the Bankruptcy Court erred in awarding summary judgment in favor of appellee. Hence, we vacate the judgment below, and remand the case to the Bankruptcy Court for further proceedings consistent with this opinion.[9]

**SO ORDERED.**

---

9. We take no view as to whether the debtors are or not entitled to a discharge. We leave this question to the factfinder below.